The Honorable, the Judges of the United States Court of Appeals to the Fourth Circuit, Oyez, Oyez, Oyez. All persons having any manner or form of business before the Honorable, the United States Court of Appeals to the Fourth Circuit, are admonished to draw a nod and give their attention to the Court that is now sitting. God save the United States and this Honorable Court. Good morning. Please be seated. We're happy to hear argument in our first case, number 132246, Dakura v. Holder. Mr. Robertson. Good morning, Judge Mox, Judge King, Judge Keenan. May it please the Court. I'm Alfred Robertson. I represent Raymond Dakura, a young man from Ghana who's married to a U.S. citizen and has a U.S. citizen child. Just so the Court's aware, Mr. Dakura has already been removed. He lives in Ghana at the present time. His wife and child still live in the Washington, D.C. metropolitan area. His wife said she would be here today. I haven't noticed if she made it, but she wanted to come and watch. In any event, Mr. Dakura, at the insistence of a criminal, essentially, was given I.D.s and went out and worked under those I.D.s. The man who gave him the I.D.s kept the money, kept the money that Mr. Dakura earned, and only gave him calling cards so he can call home. Mr. Dakura, when challenging this negative situation, found out just what lengths this criminal would go. The criminal then contacted the Prince William County Police and said Mr. Dakura had committed identity theft and should be arrested. Mr. Dakura was arrested, spent almost five months in the Prince William County Jail, arguing that these people knew I was using these identities. I didn't steal these identities. These identities were given to me for me to work so I can pay him so he would not kick me out back on the streets. Remember how Mr. Dakura, and I know you've all read everything, and I don't want to belabor the point too much, but essentially Mr. Dakura came to the United States as an F-1 student. F-1 is a visa classification. He's going to school at Linwood University in Missouri when his uncle dies. His uncle was the man who was paying his tuition. He loses all means of support. The tuition's not paid. The university understandably says you can't come to school here anymore if you're not going to pay us. He ends up homeless in a bus station in Missouri with nowhere to go when he meets Francis Asamoah, the criminal. Francis Asamoah is also from Ghana, at least that's what Mr. Dakura stated. Took him to Virginia and engaged in this scheme to get money off of Mr. Dakura. Mr. Dakura, after his criminal charges are dropped in Prince William County, is put into deportation proceedings. Through the Secure Communities Program, the jail communicates with ICE and ICE then picks him up. Mr. Dakura gets barred out of the immigration custody so he's able to stay on the street. While his immigration case is pending, he meets Ms. Pridgen. They met at church. Ms. Pridgen and Mr. Dakura have a baby after they're married. And Mr. Dakura applies to adjust his status to that of a green card holder based on his marriage to a U.S. citizen. He has to do that in immigration court. He can't do that with the service because he's already in immigration court proceedings. His I-130 is subject to a higher standard of review because he was in proceedings when he got married. The I-130 is approved. We're at the final hearing for the green card application, the I-485, when at that time the government says, oh wait, he claimed he was a U.S. citizen on this I-9 form. Well, I argue that Mr. Dakura did not claim that he was a U.S. citizen. The name he was working under was a U.S. citizen. Mr. Dakura did not get any money out of this. He did not get any real benefit out of this. I thought he got a job. He had a job, yes. He had a job, Your Honor, and the money that he made flipping burgers at McDonald's and working at Target all went to Mr. Asamoah. He had two jobs. He had two jobs at two different times. There were two different names that he was working under. Solomon Sohedi was one of the names that he was given, and I don't remember the other name off the top of my head. Well, this court understandably has not ruled directly on the issue, at least in a published opinion, that working is a benefit under the Immigration Nationality Act. I argue that it's not. I argue that it's not in the face of lots of contrary authority. All the authority is against you, right? It is, Your Honor. We have unpublished authority that's against you. It is, Your Honor. The only difference… I'm sorry, Your Honor. I said I don't think we have published authority that's against you. We've got unpublished authority that's against you. That's correct, Your Honor. All the published authority of the other circuits is against you. It is, Your Honor. So to rule in your favor, we would create a circuit split. Yes, Your Honor. I'm not asking that you rule on that point, though. All right. This gives you a Supreme Court case. And you'll be disbarred. That's true. I don't know if the Supreme Court would take it. I mean, I hope they would. A circuit split, they might. And really, I do make the point in my brief that just because you have a job doesn't mean anything to immigration authorities. Immigration authorities raid workplaces every single day and take people into custody and send them out for deportation every day. The paperwork of the employer, though, it looks like it's legitimate. I mean, they got a job at the Target store under a different name. Yes, sir, it does. So the Target's paperwork looks good, and as long as he does his job and everything, everything looks fine. But in fact, as you say, he was not the person whose name he used, and he wasn't an American citizen. That's right. So he lied to Target to get the job. Right, and because if he didn't, he would be homeless again. Remember, Mr. DeCoura had no money to go back home. Mr. DeCoura, when he lost his student visa when his uncle died and he wasn't attending school, lost his immigration status and should have gone back home. He couldn't. He had no money to do that. That's why he was stuck homeless in a bus station in Missouri when he met Ms. Dressler. But what you're really saying, though, aren't you, Mr. Robertson, is that equities can trump the law. I mean, isn't that really the base level of the argument you're making today? Boy, I wish it did. No, Your Honor, I can't make that argument. What I'm arguing is that… That's what I'm hearing you say, that the story is so sad that this violation of law isn't really a violation of law. I mean, you've got the problem that he was the one who received the paycheck. He was not. He didn't receive the paycheck, Your Honor. Mr. Asimov did. My client didn't get them. My client was given phone cards by Mr. Asimov to call home. That's in the record. How was that set up then? How was payment made by Target and McDonald's? Direct deposit, Your Honor, is my understanding. The checks were direct deposited into accounts that Mr. Asimov controlled, that my client did not control. The name was on the accounts. I don't know. All I know is that they were controlled by Mr. Asimov. I'm not even sure if Mr. Asimov's real name. Your client would have had to tell the employer where to send the money. I understand that. Mr. Asimov was not in there telling them where to send his money. I understand that, Your Honor, but Mr. Asimov told my client where to send it to. Was that fellow feeding him, the bad guy you're talking about? Giving him housing? That's Mr. Asimov. Asimov gave him the other two days. He was giving him room and board, and your guy was going out and working at the Target store, and they issued a paycheck to some bank account, and you claim that the bad guy got the benefit of the bank account. I am. He's paying for his room and board and clothing, perhaps. In addition to deceiving Target, he's deceiving the government because they really don't know where he is. He's out there using a false name. And my client admitted him. The fellow from Ghana who went to school in Missouri is not the fellow that's working for Target, according to all the records. It's somebody else, right? A stolen ID or something. That's right, Your Honor. False name. My point, my point. How are they going to keep track of him if he's using a false name? They can't. No, that's why they put him into proceedings when they caught him, when he was arrested. Now, remember, he was arrested. That's why he's up here. That's why you're here today. That's why I'm here. That's why we're all here. He was arrested when he protested this arrangement, when he said, I need to get out of this situation. And that's when a criminal complaint was charged against him. What did the comms charge him with? They charged him with identity theft and related charges for using the false name. Those charges, as the government points out in their brief, the government likes to try to use the police reports and these other evidence to show that my client was being very fraudulent in his actions when, in reality, those criminal charges were dropped against my client. They were dropped by the Prince William County prosecutors. Judge Keenan, and to be more direct on answering your question as to whether I'm arguing equities over law, what I'm arguing here is that Mr. DeCoura did not misrepresent himself. He misrepresented somebody. He used somebody else's name to work. It's not the same thing as saying, I'm a U.S. citizen. Give me a job. I'm saying that the law— What's the difference? I'm saying there's no— It seems to me that one is even more fraudulent because you're twice— There's no direct assertion by Mr. DeCoura that he was the U.S. citizen. He asserted he was a person that he was not. That's true, Your Honor. And he said he was a U.S. citizen. And that person who he was not was a U.S. citizen. That's true, Your Honor. So he made two lies instead of one. Yes, Your Honor. That's what I'm saying. However, it's not the same thing with the law. It's fraud. It's fraud. The law in question makes it— The question is whether the statute covers it, I guess. Exactly. And every court has said it does. That's the public's opinion. We don't have a published opinion. But we've said in a couple cases that it's a benefit. Just to address that, the Theodros Court— Your position is we need to create a circuit split. And that's an honorable position for the lawyer to come up here and take. The other courts— It's a hard position to sell. It is. The other courts, the Theodros Court, the other published cases that I've reviewed, all indicate that the individual in those cases was using their own name, seeking employment under their own name. It wasn't under somebody else's name when they were doing it. Not the Rodriguez case out at the Eighth Circuit. Not the Rodriguez. That was a false name, wasn't it? That was a different case. But Mr. Rodriguez was using the same false name throughout his whole time here. It's a little bit different. But you're right. The Rodriguez case is the outlier. My time is almost up, so I'm going to take my leave. I appreciate you listening to me today. Mr. DeCoura did not misrepresent himself as a U.S. citizen. He should be allowed to rejoin his wife and child in the United States. Mr. DeCoura did not receive any benefit from this employment, and whether or not that benefit is controlled by law is the question. Mr. DeCoura should not be permanently barred from living in the United States because he was homeless and needed to find a way to get a room of board over his head in order to try to earn some money to get back home. And that's what's happened in this case. Thank you. Thank you very much. Ms. Miles. Good morning, Your Honors. I'm Erica Miles for Attorney General Holder. May it please the Court. The Board properly determined that DeCoura's claim that he is a United States citizen, which was a false claim, in order to secure private employment constituted an attempt to secure a benefit under the INA. Mr. DeCoura admitted that he did this. He admitted that he entered into a scheme in which he claimed to be another person who was a United States citizen in order to get his employment. This makes him inadmissible, and for that reason, he is not eligible to adjust his status to a lawful permanent resident. There's no waiver. He has no ability to overcome this ground of inadmissibility. It's irrelevant that the scheme didn't go as he had planned, that he didn't get paid personally. He willingly entered into this scheme. Did that other fellow get the money? Did he want to have the checking account? That's what it sounds like, but regardless, he didn't know. When he entered into this agreement to commit the fraud of pretending he's somebody he's not, he thought he was going to earn money and get more money for school tuition. That's the reason he was doing this, was to continue his education. It just didn't go according to the plan, to what he thought was going to happen. But there's no question here that he entered into the scheme willingly, that he agreed to pretend he was someone he's not and to claim that he's a United States citizen in order to get those jobs at Target and McDonald's. This court has agreed with the six other sister circuits that have either reached the decision or commented on it, in that this is claiming citizenship to secure private employment is a benefit under the INA. That's the ultimate issue here. It is. There's no doubt because the INA itself references the employment provision at 8 U.S.C. 1324A about unlawful employment of aliens. When it's talking about securing a benefit under this inadmissibility provision, there's just no argument here in favor of Mr. DeCora's position. He raises a distinction without a difference, that he was not using his own name, instead using someone else's identity, so that he was claiming to be a United States citizen through this additional identity. And as Judge Motz pointed out, it was two levels of fraud instead of one, essentially, in order to do that. And in the Rodriguez case, they faced that exact scenario in the 8th Circuit. And they there agreed. Is that the best case, as far as you're concerned, of the six circuits? Rodriguez the one you like the most? The 8th Circuit and Rodriguez, this court liked one, too, and it's unpublished decisions in Davis and Ram Sundar. This court relies on Rodriguez. This court also relies on its published decision in a criminal context case called Castillo-Pena. And while we don't have the same burdens of proof at issue here, what we do have is a finding by this court in the criminal context, so someone criminally claiming United States citizenship. And in that case, somebody, just like in this case, appropriated the identity of a United States citizen and then claimed that they themselves were that person and a United States citizen. And there they found that because the evidence showed that he appropriated or stole that identity of another individual, that that necessarily meant that his actions beyond that were claiming or that he was claiming United States citizenship. So this court has reached that in the criminal context where the burden of proof was even higher. The burden of proof was on the prosecution. Do you have that criminal case in your brief? Yes, I do.  It's Castillo-Pena, 674 F3D, 318. So I... You cited it as if it's a published case. It is a published case in the criminal context. I thought I was looking for an unpublished case. Yeah, no, this is a published case, and this court in the Davis, in the unpublished Davis case in the immigration context relied on Castillo-Pena. So I believe this court has addressed every issue of concern in this case, and... Are you down to the view we don't even need a published decision? I believe the court should, so once and for all, we don't need to keep litigating this issue over and over because until we have a published decision, the question's going to come up. And perhaps some people will try to pursue it, but if the court publishes the decision, then hopefully counsel for these individuals will at least not try to fight this issue where there's no distinguishing factor. And here, when you look at all of the sister case, sister circuit case law, this court's unpublished decision and this court's published decision in the criminal context, everything's been answered. That is at issue in this case. The form here, form 1-9? Yes. The form has a box that tells you to check whether you're a citizen or national of the United States. Yes. What is the significance of... Suppose, I know he hasn't, but suppose the appellant here had claimed to be a national. Actually, perhaps the form was amended since some of the other courts have addressed the I-9 form. No, but on page 101 in the record, you have the form if you'd like to take a look at it. It doesn't say... It brings up a citizen or national of the United States. You're right. But the other courts in addressing the question, because the burden is on Mr. DeCora, the courts have addressed... Yes, I have. Claiming that you're a national is different than claiming you're a United States citizen. I would agree with that. In the admissibility provision, it's not talking about claiming nationality, just claiming that you're a citizen. However, the distinction here does not matter because the burden of proof, as other courts have discussed, the burden of proof is on Mr. DeCora to show that he did not claim that he was a U.S. citizen. And he cannot. And he, in his own testimony... I don't think you understood my hypothetical. Sure. I understand he hasn't claimed that. I'm asking what the result would be if someone did claim that. I could not tell you for sure. It's possible... Has the form been changed? Is that what you're telling me? No, I was looking at the form incorrectly. I don't think it has changed since then, now that I look at it. Excuse me? The form appears to be ambiguous. Ambiguous because it says a citizen or national. So if he had claimed that he was a national here... If he had claimed, it's possible that the outcome would be different. I have not handled or come across a case where that was in question, but it is possible because a national is not a United States citizen, so perhaps he would have been... Excuse me, I'm sorry? Is a national defined? It is defined, yes. I don't know the definition because that wasn't an issue here, so I didn't look up the precise definition of what a national is. Can you tell me generally what a national is, what you have to prove to be a national? I believe a national is somebody that perhaps lives in the Virgin Islands or in Guam. So they have an association. They have a lot of the benefits of citizenship, but they're not quite citizens because those other countries, they have the special relationship, but they still have their independence from the United States. That's an example of who a national would be. Not just someone... Puerto Rico. Someone from Puerto Rico. No, typically it's not just somebody who's lived here for a long time. I'm not really caring about typically. I'm caring about whether it could cover someone who lived here for a long time. It's possible if someone from Puerto Rico maintains their Puerto Rico... Leave aside... We seem to be having a Paul Newman one time called a failure to communicate. I apologize. I'm leaving aside those people that you've talked to me about in the Caribbean islands somewhere, and I'm trying to figure out if there's any other word of, what the word of art national covers, and I guess you don't know if it's... I'm not familiar because I don't... Okay, fine. How do you know what he's claiming here? He testified that he claimed... He testified? Yes. The form does not say. But his identification... Pardon? He provided a passport that said he's a United States citizen in addition to the form. So he did affirmatively say that he is a United States citizen in filling out this form. It's not just checking the box. He provided a United States citizen... He says he's one or the other. Right. He checked the box, but then as proof of who he is, he provided the passport that says he's a United States citizen. The testimony is in the record, pages 80 to 81 and page 86. If the court doesn't have any other questions, I will just ask that the court please deny the petition for review and join its sister circuits in finding that a false claim of citizenship, the way Mr. DeCora appropriated somebody else's identity and claimed that he is a United States citizen in order to secure private employment, is an attempt to secure a benefit under the INA and that he is inadmissible for that reason. Thank you. Mr. Robertson, do you have any rebuttal? I do. Just to hit on some highlighted points. Working, despite the contrary authority, despite what the other circuit courts have said, working is not an immigration benefit. It just clearly isn't. It doesn't mean anything to anybody who is enforcing the immigration laws as to whether the person is working or not. I still stick with that position even in the face of all the contrary authority. I do doubt the contrary authority. I do want the court to understand that I am not trying to hide the contrary authority. I know it's out there. I know what it says. I just believe that on the face of it, it's just an absurdity almost, that just by working, you have some sort of immigration benefit. I'm sorry, Your Honor. What if he had told the truth and applied for the job over at Target and given him his correct name? They would have asked for proof of employment authorization and when he didn't have it, they wouldn't have given him the job. Right, but if he had told them the truth about who he was and he was not here or whatever the status was at that time. Right, he was out of status at the time. They wouldn't have hired him. They wouldn't have hired him or if they had hired him, they wouldn't be breaking the law themselves. It wouldn't have made any difference to immigration authorities whether he was working or not and it wouldn't have made any difference when he tried to get a driver's license or anything else. He would still have to show proof of legal residence in order to get that position. Just to hit on a couple of... The immigration authorities would probably know where he was and would have taken steps to... That's true. That's true. The immigration authorities did find him quite easily when he was in jail. He wouldn't have been able to work very long. But even the immigration authorities at this point, given their prosecutorial discretion and their guidance that they're getting from the executive branch, would not have been pursuing Mr. Ducoura, would not have been pursuing him to try to get him out of the country just because he had fallen out of status. Falling out of status is... I sometimes joke that immigration is kind of like having 25 police officers for the entire Commonwealth of Virginia. A guy who spray paints an overpass in Roanoke has certainly broken the law and should be punished. But when there's only 25 police officers, he's not going to get caught. It's just not that serious enough. And that's kind of where Mr. Ducoura is in falling out of status. It's a minor property crime if you're looking at it in the criminal defense context. I wanted to hit some highlights on the J. In the joint appendix, pages 82 through 91, is the cross-examination and my redirect of Mr. Ducoura about this issue specifically. Also, Judge Moss to address the national issue. A national of the United States is my understanding from the case law that I've read, and I wish I could cite it to you, but I can't. It's just what I remember. A national is someone who owes all their allegiance only to the United States and to no other country. That's how it's been defined in past case law. This court, in unpublished case law, has essentially said that a national of the United States is a citizen of the United States. I wish I could tell you that unpublished case. The only thing I could tell you about that case was the attorney that argued is a friend of mine, Mark Saganow. But that's all really mooted here because he admitted he was not a national of the United States. He did. He did. It really isn't that important to this case. It's just that I didn't want you leaving without having the question answered. That's one thing I've always was taught about oral arguments. Make sure you answer all the questions, even if it goes against you. But especially if it helps. The point here is that Mr. DeCoura did not get any benefit from this employment. The money went to somebody else. The only thing they gave him was calling cards to call home. And because he worked under these false names in a scheme that was run by Mr. Asamoah, is that he is permanently separated from his wife and child. And I know that goes to the equities argument. I want to push that equities argument. I think it's important, when you're looking at it, an exception to what this law covers. This law does not cover the situation where the person is using a false name and is not getting any of the benefits from the employment or getting any status from that employment. There's no status to be given just because you're simply working. Thank you very much for listening to me. Thank you for your patience. And I hope that this court rules favorably for Mr. DeCoura, no matter what you do, in deciding whether it's a benefit or not. Thank you. Thank you very much. We will come down and greet the lawyers and then go directly to the next case. Judge King.
judges: Diana Gribbon Motz, Robert B. King, Barbara Milano Keenan